UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**MICHAEL DALE WILKEY**                                                                                   **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 5:07-CV-P61-R**

**BILL ADAMS et al.**                                                                                     **DEFENDANTS**

### MEMORANDUM OPINION

The plaintiff, Michael Dale Wilkey, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). He also has filed an amended complaint (DN 14). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed in part.

### I. SUMMARY OF CLAIMS

At the time he filed his original complaint, the plaintiff was a pretrial detainee at the McCracken County Jail. His original complaint stated that he was bringing a civil rights suit on behalf of himself and similarly jailed prisoners throughout the State of Kentucky against Bill Adams, jailer at McCracken County Jail; the McCracken County Jail; the City of Paducah; the head of the Department of Corrections in Frankfort, Kentucky; the State of Kentucky; and Ernie Fletcher, Governor.

In the complaint, the plaintiff alleges that, during the third week of April 2007, he complained of "pain and suffering" and was seen by the head nurse of the jail who was "demeaning and sarcastic." The plaintiff states that, after he explained to the nurse that he had degenerative cervical disc disease and had undergone four surgeries to repair hernias, the nurse told him that she would give him ibuprofen but that from then on he would have to order it off

the canteen and that, because his conditions were pre-existing, he would have to seek medical assistance on his own once he was released from prison. He states that, because he disagreed with the nurse's analysis, he refused her treatment. He alleges that "[t]his is standard operating procedure here at the jail." He states that he should receive surgery to "relieve the nerves" and surgery has been suggested before by specialists outside of the jail for his neck and shoulder. He states that he believes that surgery would help but that he is being denied by medical staff to see outside specialists for surgery because the jail does not want to be liable for the cost of treatment. He further alleges that he had to sleep on the floor until April 20, 2007, when he got a top bunk. He alleges that it was difficult and painful getting on and off the bunk. He states that prisoners who require different living conditions because of a medical condition generally are placed on medical watch, which is basically segregation; are given a mattress and perhaps a sheet or a blanket; must sleep on the floor; and are not afforded the same privileges as the general population, such as watching TV, access to the law library, and visits.

The plaintiff further alleges that on April 21, 2007, when he asked jail staff for a grievance, he was asked what the grievance was for and was told they would get to him when they could if it was about the law library. The plaintiff states that prisoners are only allowed to visit the library one hour at a time. He states that on April 20, 2007, he was allowed to go to the law library but was told by jail staff that that visit was a "favor." He alleges that "we aren't afforded or able to receive pens or pencils [from] the jail for the last 2 months."

The plaintiff also alleges that he has asked for relief from overcrowding, without any response. He states that the cell blocks are designed to hold 14 prisoners but regularly hold 27-32 prisoners. He states that prisoners are required to sleep on the floor or on dilapidated

mattresses, some of which appear to be "varmint and lice infected." He also alleges that there is rampant staph infection, due to overcrowding, and that notices to that effect are posted throughout the jail. He also alleges that overcrowding has caused black mold to collect in the showers; that there is constant noise; that the jail is dirty; and that tempers are short due to the overcrowding. The plaintiff also alleges that prisoners, including himself, have continuous sinus infections, colds, staph infections, and eye problems but the medical staff refuses to "treat it as such."

The plaintiff further alleges that the grievance system afforded to McCracken County Jail prisoners is inadequate. He states that no one from the jail responds to them and that the forms get picked up by jail staff in no particular order and sometimes are read before they reach their destination.

Finally, the plaintiff alleges that the Department of Corrections and the State of Kentucky, particularly the Governor's Office, know of the ongoing mistreatment of the prisoners throughout Kentucky's jail system and choose to do very little about it. He alleges that, to look like they are complying with the courts, the McCracken County jailer spruces up the jail when federal, state, or local inspectors show up.

As relief, the plaintiff asks for monetary damages and punitive damages of $200,000,000 each; injunctive relief in the form of relieving overcrowding, stopping the mistreatment of prisoners, and better medical treatment; and to make sure no reprisals are taken against prisoners if the Court considers this case as a class action.

The plaintiff also has filed a Memorandum of Law, in which he adds citations to various state laws in his discussion regarding the overcrowding of McCracken County Jail (DN 11).

Also included in that document is the plaintiff's statement that he was injured playing basketball approximately four weeks previously and had not been afforded what he feels is appropriate treatment. He alleges that it took the medical staff four days to examine him. He states that he was sent for x-rays, but the x-rays were negative. He alleges that he injured his left shoulder and rotator cuff; has been in continuous pain and suffering; and has nerve damage. He alleges that he continuously sent requests to the medical staff and was seen by Dr. Cecil, who gave him a "20 second" examination and gave him "inflamatories";[1] that he still has pain; that he was seen by jail medical staff a few more times; and that, when he was seen by the doctor a second time, he was told that he should be given "an academy award." He alleges that the doctor ordered more "inflamatories" and denied his requests to be seen by an outside specialist to determine if he should have an MRI or CAT scan. The plaintiff asserts that the doctor told him that they could not spend more than $2,000 on the treatment and that his injury was not life threatening. He also alleges that he told the doctor that he had degenerative cervical disc disease and asked for "nerve conductive tests," but was denied.[2]

Shortly thereafter, the plaintiff filed an amended complaint (DN 14). He states that he wishes to add as defendants Jailer Osborne; Carol Byrd, a treating assistant physician at Daviess County Detention Center (DCDC); DCDC; Daviess County, and Dr. Cecil, who is contracted by McCracken County Jail. He asserts that he has been placed on "med watch" under camera surveillance, he believes, for retaliatory reasons. He states that when he arrived at the DCDC, he

---

[1] The Court interprets this to be anti-inflamatories.

[2] The plaintiff also submits an attachment (DN 5) in which he states that the state court erroneously dismissed a complaint even though he did sign the cover letter and complaint. He states that that dismissal has been appealed.

told the Deputy Jailer, who was doing the booking, that he had sustained an injury to his left shoulder while at the McCracken County Jail and that it felt like he was having a "mini-stroke." He also states that the deputy sheriff who had transported him from Paducah had been ordered to transport him to the emergency room to get "clearance" and that that deputy sheriff threatened him with no provocation. He states, "Deputy Sheriff (transport) was . . . mad because had a prior engagement planned." He states that the emergency room doctors did order x-rays and a urine test, but that the x-rays were negative. He states that he believes that the reason he is not being seen by outside specialists, preferably an orthopedic surgeon and a neurologist, and given an MRI and a CAT scan is because of the expense.

He further states that, while at the emergency room, the original deputy sheriff was relieved by a part-time deputy sheriff (name unknown) who pulled out a knife and remarked that he could get blood from the plaintiff when the medical staff were having trouble getting blood from him. He alleges that this treatment violated his civil rights. He asserts that each county facility's inability to treat him because of the cost is not relevant under state law and that he is being systematically denied treatment because of each jail's policy, which is unconstitutional because it violates state law.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis

either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007).

A.      *Claims on behalf of other similarly situated prisoners*

By separate order, this Court has denied the plaintiff's motion for permission to proceed as a class action (DN 8). "Standing is 'the threshold question in every federal case.'" *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To satisfy the standing requirement of Article III of the Constitution, a plaintiff must show, among other things, that he has "suffered some actual or threatened injury due to the alleged illegal conduct of the defendant." *Id.* The plaintiff may not assert claims that are not personal to him. *Coal Operators & Assoc., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002). Therefore, the plaintiff in this case lacks standing to raise a claim on behalf of other inmates, and any claims on behalf of other inmates lack subject matter jurisdiction. *Babbitt*, 291 F.3d at 915 ("[S]tanding to sue . . . is a jurisdictional requirement."). Moreover, prisoners have no constitutional right to assist other prisoners with their legal matters. *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993) (citing *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990)); *Glassler v. Rahl*, 862 F.2d 706 (8th Cir. 1988)). Therefore, all of the plaintiff's claims brought on behalf of similarly situated prisoners must be dismissed.

B.      *Claims for injunctive and declaratory relief against McCracken County Jail*

      Shortly after he filed his Memorandum of Law, the plaintiff informed the Court that he had been transferred to Owensboro Detention Center (DN 13). Therefore, all of his claims for injunctive and declaratory relief related to the McCracken County Jail are moot.

C.      *Claims against the McCracken County Jail and official-capacity claims against Adams*

      McCracken County Jail is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Compare Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir.1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, it is McCracken County that is the proper defendant in this case. *Smallwood v. Jefferson County Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, McCracken County is a "person" for purposes of § 1983. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Court will therefore construe the claims against McCracken County Jail as brought against McCracken County.

      If an action is brought against an official of a governmental entity in his "official capacity," the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Therefore, in the case at bar, the plaintiff's official-capacity claims against Adams are actually brought against McCracken County, and the Court will construe them as such. *See*

*Watson v. Gill*, 40 F. App'x. 88, 89 (6th Cir. 2002) ("Because the McCracken County Jail is a department of the county, the county is the appropriate party to address [plaintiff]'s suit.").

### D.     *Official-capacity claims for monetary damages against the head of DOC, the State of Kentucky, and the Governor*

The plaintiff sues each of the state defendants in their official capacities. Because he sues the employees in their official capacity, the claims brought against them are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *See* § 1983. States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will,* 491 U.S. at 71. Thus, because the plaintiff seeks money damages from these state officers in their official capacities, he failed to allege cognizable claims under § 1983. Moreover, the defendants are immune from monetary damages under the Eleventh Amendment. *See id.*

Because the plaintiff fails to state a claim upon which relief could be granted and because he seeks monetary relief from defendants who are immune from such relief, the Court will dismiss these claims pursuant to §§ 1915A(b)(1) and (b)(2).

### E.     *Individual-capacity claims against the head of KDOC and the Governor*

The plaintiff states he was housed in a county facility, not a facility that is part of the state's prison system. Nor does his complaint allege any wrongdoing against the plaintiff by the head of the KDOC or the Governor. As already discussed, the plaintiff is not allowed to bring claims on behalf of any other prisoners. And, his request to certify this action as a class action has been denied. Therefore, he may raise only those claims personal to him. As he has raised no

claims against these state officials, these claims will be dismissed for failure to state a claim.

### F.     *Claims against the City of Paducah*

The plaintiff does not allege any wrongdoing against him by the City of Paducah.[3] According to his complaint, he has been housed in county facilities – the McCracken County Jail and Daviess County Detention Center. Consequently, the claims against the City of Paducah will be dismissed for failure to state a claim.

### G.     *Claims regarding medical treatment*

This claim is brought against Adams in his individual capacity and McCracken County. When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex*., 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is

---

[3] McCracken County Jail is located in Paducah, Kentucky.

a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, the plaintiff has alleged the existence of a governmental policy or custom relative to the nature of his complaints and claims regarding the actions of McCracken County in that he has alleged that the county has a policy of denying medical treatment to save money.

The Eighth Amendment does not apply to pretrial detainees. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). "Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under

§ 1983.'" *Weaver v. Shadoan*, 340 F.3d at 410 (quoting *Estelle*, 429 U.S. at 105) (alteration in original).

The Court notes that according to the plaintiff's allegations he is in pain and was previously told by outside doctors that he needed surgery for his degenerative disc disease. However, he states that he was seen by the nurse at McCracken County Jail, who only offered ibuprofen for pain related to his degenerative cervical disc disease and informed the plaintiff that because his conditions were pre-existing they would not be treated. The Court finds that the plaintiff has stated a claim for deliberate indifference to his serious medical needs with regard to his degenerative disc disease.

However, the plaintiff fails to state a claim for deliberate indifference to a serious medical need regarding treatment after his basketball injury. He was seen by a doctor two times and medical staff several times after this injury, as well as having x-rays taken and being given anti-inflamatories. The plaintiff's belief that he should be seen by outside specialists, have an MRI or CAT scan, and have surgery merely constitutes a disagreement over medical treatment and, as such, does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). His claim related to his basketball injury will be dismissed.

## H.  *Overcrowding*

Overcrowding in a prison is not itself a violation of the constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). Overcrowding conditions can be restrictive and even

harsh; however, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Id*. at 348. The plaintiff's allegations that the cell pods are crowded, that some inmates must sleep on the floor, and that there is noise are not deprivations of the minimal civilized measure of life's necessities. "The Sixth Circuit has held that requiring prisoners to sleep on the floor without likewise depriving them of essential food, basic sanitation, or safe temperatures does not rise to the level of an Eighth Amendment violation." *Eddings v. Herrington*, 4:05CV-P138-M, 2005 WL 3134045, at *5 (W.D. Ky. Nov. 23, 2005) (citing *Brodak v. Nichols*, No 97-1688, 1998 WL 553032, at *1 (6th Cir. Aug. 17, 1998)); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (holding that as a matter of law defendants did not violate inmate's Eighth Amendment rights by depriving him of a mattress for a two-week period). The plaintiff's allegations that tempers are short due to overcrowding and that some of the mattresses appear to be "varmint and lice infected" are purely conclusory. Although he alleges that there is mold, and that it is "toxic," the plaintiff does not allege that the mold has affected his health. Moreover, he alleges that the mold is very high up in the showers and cannot be cleaned. He further alleges that *if* it were cleaned the "toxic" mold spores would disperse. Therefore, the plaintiff has not alleged that he is exposed to the mold or the mold spores. The Court will dismiss these claims for failure to state a claim.

However, the plaintiff does allege in his complaint that "[p]risoners of the jail, including myself[,] have continuous sin[u]s infections, colds they can't get rid of, staph infections, eye problems, but medical jail staff refuses to treat it as such. This is all due to overcrowding and total compete indifference to the safety, health, and welfare of the jailed prisoner by the jail

staff." Thus, the plaintiff does allege that prison conditions at McCracken County Jail have caused him health problems, including staph infections. The Court will allow the plaintiff's allegation that overcrowding and unsanitary conditions have caused him health problems to go forward against McCracken County. *See id.*; *Halliburton v. Sunquist*, 59 F. App'x. 781, 782 (6th Cir. 2003) (sanitation is one of the basic human needs).

### I.     *Claim regarding top-bunk assignment*

The plaintiff alleges that he told the head nurse at the jail that he had degenerative disc disease and had had four operations for hernias. He further alleges that it is difficult for him to get in and out of the top bunk and that getting in and out of the bunk causes pain. "If the offending conduct does not purport to be a criminal penalty, as is the case herein, the offending conduct must reflect an unnecessary and wanton infliction of pain to fall within the ambit of conduct proscribed by the Eighth Amendment." *Mulazim v. Corrigan*, 7 F. App'x. 427, 429-430 (6th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "For such non-penal conduct, a viable Eighth Amendment claim has both an objective and subjective component." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The objective component requires that the pain be serious, and the subjective component provides the means to establish that the offending, non-penal conduct is necessarily wanton in order to state a violation of the Eighth Amendment." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991)).

Here, the plaintiff does not allege that he asked for a lower bunk assignment or that medical personnel ordered a lower bunk assignment. However, he does allege that he told the head nurse at the jail that he had degenerative cervical disc disease. He also alleges that he has

pain from that condition and that getting up into the top bunk is difficult and causes pain. In an abundance of caution, the Court will allow this claim to go forward.

*J.     Access to courts*

The first inquiry in any § 1983 case is whether a deprivation of a right secured by the Constitution or laws of the United States has occurred. *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995). In order to state a claim under § 1983, the plaintiff must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The courts have recognized repeatedly that there is no constitutionally protected right of access to a law library. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). Prisoners do have a right of access to the courts, but it does not guarantee access to a prison law library. *Id.*; *Bounds v. Smith*, 430 U.S. 817, 830-31 (1977); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Even when an inmate claims his access to the courts was denied *merely* because he was denied access to the prison library, or certain books, he fails to state a claim absent any showing of prejudice to his litigation. *Walker v. Mintzes,* 771 F.2d at 932. In order to state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.").

Although the plaintiff complains that his access to a law library has been limited and that he has had difficulty obtaining pens or pencils, the plaintiff has made no specific allegation of

actual prejudice to pending litigation. Consequently, his claims related to the prison law library and access to the courts must be dismissed.

### K.     *Inadequate grievance system*

"Prison inmates do not have a constitutionally protected right to a grievance procedure."

*Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 03, 1998) (citing *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 138 (1977) (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)); *see also Ishaaq v. Compton*, 900 F. Supp. 935, 940-41 (W.D. Tenn. 1995); *Flowers v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991). Therefore, a failure to follow the grievance procedures does not give rise to a § 1983 claim. *Id.*; *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Thus, the plaintiff's claim relating to the lack of an adequate grievance procedures at McCracken County Jail must be dismissed.

### L.     *Claims against Jailer Osborne*

The plaintiff's amended complaint does not specify in what capacity he is suing Jailer Osborne. Because the plaintiff references Jailer Osborne in the context of his official position, the claim will be construed as brought against Jailer Osborne in his official capacity. *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc) (where § 1983 plaintiff fails to affirmatively plead capacity in the complaint, the Court looks to the course of proceedings to determine whether the Sixth Circuit's concern about notice to the defendant has been satisfied). If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will*, 491 U.S. at 71. Therefore,

in the case at bar, the plaintiff's claims against Jailer Osborne are actually brought against Daviess County. *See Matthews*, 35 F.3d at 1049.

### M.   *Claims against the Daviess County Detention Center*

The plaintiff sues the Daviess County Detention Center. As the Daviess County Detention Center is not an entity subject to suit, *Matthews*, 35 F.3d at 1049, the claims against the detention center must be brought against Daviess County as the real party in interest. *Id.* (advising that since the county police department is not an entity which may be sued, the county is the proper party); *Smallwood*, 743 F. Supp. at 503 (concluding that a suit against the fiscal court and judge executive is actually a suit against the county itself).

### N.   *Claims against Carol Byrd and Dr. Cecil*

The only allegations the plaintiff makes against Byrd is that she told him that he would not be at Daviess County Detention Center long and that they would let "Paducah" handle his medical problems. He also states simply that, when he told Byrd that he was not a state prisoner, "she just smiled." The only allegation against Dr. Cecil is made in his amended complaint. The plaintiff alleges simply that he "has exhausted all administrative remedies, through grievance procedures to medical staff and jailers without any treatment or diagnosis by an outside specialist, because of expenses that it would incur. I was flat out told this by Dr. Cecil."

Some factual basis for claims must be set forth in the pleadings. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The specific facts must also explain how the plaintiff himself was personally injured by the challenged conduct or condition, *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986), and how the defendant is responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). The plaintiff does not allege that Byrd or Dr.

Cecil denied him medical care but rather that they told him that he would not be receiving medical care that he requested. Moreover, as already discussed with regard to McCracken County and as will be discussed with regard to Daviess County, the plaintiff has only shown a difference of opinion with regard to his disc disease and treatment after his basketball injury. Because the plaintiff has made no allegations of wrongdoing against Byrd and Dr. Cecil, his claims against these defendants will be dismissed.

### O.   *Deliberate indifference claim while at Daviess County Detention Center*

The plaintiff alleges that while at the Daviess County Detention Center he also suffered from deliberate indifference to his serious medical needs because he was not seen by outside specialists or given an MRI and CAT scan and surgery. Whether the plaintiff has alleged a municipal policy of Daviess County caused a constitutional violation is immaterial because he has not alleged a constitutional harm. According to the plaintiff, before he was brought to the Daviess County Detention Center he was taken to the emergency room and had x-rays taken, which were negative, and a urine test. His allegation concerning deliberate indifference at the Daviess County Detention Center fails to state a claim for deliberate indifference to a serious medical need. The plaintiff's belief that he should be referred to outside specialists and given certain diagnostic tests merely constitutes a disagreement over medical treatment and, as such, does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n5.

### P.   *Claims regarding threatening behavior by deputy sheriff*

The plaintiff alleges that an unnamed deputy sheriff, while holding a five-to-six inch knife said to him when medical personnel were having difficulty drawing blood that "he can get

blood from [plaintiff]." However, the only pertinent defendant with regard to this claim is Daviess County. When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins*, 503 U.S. at 120. The court will address the issues in reverse order.

In this case, the plaintiff has not identified the policy, connected the policy to the county itself, or shown that the particular injury was incurred because of the execution of that policy. *Garner*, 8 F.3d at 364. Because the plaintiff has failed to allege the existence of a governmental policy or custom relative to the nature of his complaints and claims regarding the actions of the deputy sheriff, this claim must be dismissed.

### III. CONCLUSION

By separate order, the Court will dismiss all of the claims against the City of Paducah, the head of the Kentucky Department of Corrections, the State of Kentucky, and Governor Fletcher, Carol Byrd, Dr. Cecil, Daviess County Detention Center, Daviess County Sheriff's Department, Daviess County, and Jailer Osborne and all of the plaintiff's claims brought on behalf of other prisoners. The Court will construe all claims against McCracken County Jail and the official-capacity claims against Jailer Bill Adams as against McCracken County. The Court will allow the claims regarding medical treatment for the plaintiff's degenerative disc disease while at McCracken County Jail, the plaintiff having a staph infection(s), cold, eye problems, et cetera due to overcrowded/unsanitary conditions and his claim regarding the top-bunk assignment to go forward against Adams in his individual capacity and against McCracken County. The remainder of the claims against Adams in his individual capacity and against

McCracken County will be dismissed. A separate scheduling order will be entered to govern the development of those claims.

Date:


cc: Plaintiff, *pro se*
 Defendants
 McCracken County Attorney
4413.009